And final case of the day is 23-12772 Mark Gardner, Lonnie Hood, Ivory Streeter v. Keisha Lance Bottoms, Erica Shields, et al. And Mr. LaRusso, I see that you've reserved five minutes for rebuttal. Whenever you are settled, please proceed to the podium and you may begin. Good morning again. May it please the court. On May 20th, excuse me, May 30th, 2020, with the world watching and this city almost literally burning, the three gentlemen seated behind me, investigators Gardner, Streeter, and Sergeant Hood, answered the call of this city to protect it, to protect this very building, and to protect the citizens. And I urge you through this appeal not to tell them that they are unable to redress the grievances for the horrible things that happened to them at the hands of public officials. The standard of review here is for the court to review all inferences and all facts in favor of the plaintiffs. Further, the question is, did the plaintiffs plead a plausible case? We submit to the court that they did. We submit to the court that the district court improperly accepted different facts and failed to give appropriate weight to the facts pled by the plaintiffs. Further, Your Honor, we believe that the court applied inappropriate analysis with regard to prosecutorial immunity, provided almost no analysis on equal protection, wrongly relied on Owens versus Fulton County, which is completely an opposite to this case, and wrongly stated that the stigma plus burden was not satisfied by pointing out a Fourth Amendment violation or by pointing out and alleging that the plaintiffs did not meet the requirements. We are not alleging that a employment relationship is required for a stigma plus claim. Let's start with the prosecutorial immunity issue. We know that the district attorney at the time, Paul Howard, he reviewed the body cam footage to see whether there was probable cause for an arrest. And then we have the Supreme Court in Buckley has said that acts covered by absolute immunity must include the professional evaluation of the evidence assembled by the police to determine whether probable cause exists. So how, that's our second light that's just gone out, how do you get around Buckley? That was not evidence that was collected by the police. That was evidence collected by Mr. Howard. But Mr. Howard, before he is going to be proceeding with the prosecution of this case, is going to necessarily have to look at the body cam footage, right? He is, Your Honor, after probable cause has been determined. If we look at Buckley and we even go into the concurrence by Justice Scalia and the concurrence by Justice Kennedy, there's two things that are very important. Justice Scalia stated very clearly this is a bright line rule before and after probable cause has been established. And then so far as Justice Kennedy, which will become important later, I'll mention it right now, not only concurred but also stated that statements to the press are not prosecutorial acts. So what the court failed to do below was create that bright line and say prior to probable cause being created, the prosecutor, the investigator were acting not as prosecutors. They were acting as law enforcement officers, and therefore they're entitled to qualified immunity. Can you show me the non-conclusory allegations of investigation? In the complaint? We set out all of the allegations that we had, all of the facts that were present, that they looked at the body camera. They failed to consider anything. And this is – it's important to look at this, Judge Luck, because you're not looking at a group of officers who are rookies. If we're going to have prosecutors looking at body cameras, one of the things they should consider is whether or not their actions are privileged at law, whether or not they are justified. And this case is specifically unique. We have an independent prosecutor who not only said there was no probable cause, also said their actions were justified at law. Didn't the new prosecutor state that there was no actual investigation – or what it stated was having done an actual investigation and then reached some conclusions, right? And I don't think that's hyperbole. He specifically states that. Okay. And it's in the complaint. I mean, I didn't make that up. You quote it in the complaint. I've read every word of it. Doesn't that seem to indicate that there was no investigation done? It's interesting, Your Honor. Is Mr. Howard saying, well, we didn't do an investigation? Okay. Then you arrested them without doing an investigation. Right. And that precludes any qualified immunity if they're going to ask for it. It might, but it doesn't help you on the prosecutorial misconduct part. Respectfully, Your Honor, it does. Because if you're trying to talk about a pre-probable cause determination, which Buckley makes a bright-line rule, that clearly is a pre-probable cause determination. And if you look at Thomas's argument – How is zero investigation – your whole – as I understand your whole theory, it's that there was investigation. Investigatory work is pre-prosecutorial, and that's not immune. That's subject to qualified immunity. But if there's no investigation done, if you've alleged that there's no investigation, and all we've done is a warrant was taken to a judge, a judge signed off on the warrant, and they had a press conference, and I agree with you on the press conference, it's treated separately. So we're just talking about having the investigator go down to the judge, get the warrant signed. That clearly is covered by prosecutorial immunity. Respectfully, Your Honor, it's not. With Imbler, there's a clear statement that a person swearing out a warrant is performing the job of a witness, not the job of a prosecutor. I know, but bringing that warrant and presenting that warrant to the judge is an act of the prosecutor, is it not? No. If that's the case, then every law enforcement officer in the state of Georgia who brings a warrant affidavit to a judge, a magistrate, a superior court judge, is committing a prosecutorial act. And clearly they are not. I've done hundreds of them. Except counsel, there's a little bit difference here, as you know, which is that this isn't a law enforcement officer that's working for an agency outside the realm of the prosecutor. As you know, and you've alleged this, the way this normally works is police do an investigation, they present evidence, they seek an arrest, they make an arrest, and then they bring it over to the prosecutor, and the prosecutor gets to decide whether they're going to go forward with it or not. That's the separation that normally happens. This case was different. The prosecutor, I'm sorry, the investigator was working with the prosecutor. They are an agent of the prosecutor. And so the investigator is the one at the behest of the prosecutor who said, go down as my agent to the judge and get a warrant. Isn't that a prosecutorial act under? Under Buckley, when he does so, it's pre-probable cause. His actions are pre-probable cause. Here's what the Supreme Court said in Burns. The prosecutor's actions at issue here, appearing before a judge and presenting evidence in support of a motion for a search warrant, clearly involve their role as advocates for the state rather than their role as administrators or investigating officers. In Kalina, the Supreme Court said that prosecutors are absolutely immune where, quote, present, where there is, quote, presentation of a motion for an arrest warrant to the court. Didn't the investigator who worked for, I use the investigator, but this is the guy who worked for the prosecutor here. Didn't he do exactly that? No, Your Honor. Respectfully, that's part of the problem. And that gets us to Owens. He is a county agent. He's a county employee. He's trained by the county. And that's why Owens is inapplicable. This is a situation where Paul Howard was acting in a role supervising law enforcement officers and administrative actions. Can I go back to the complaint? So I mentioned to you the quote from the special investigator. That's at docket entry 141 at page 22, paragraph 108 of the complaint. There's another allegation in the complaint I want to ask you about. This is at page 43, paragraph 227, where it states, quote, that the state attorney, quote, failed to properly investigate or pursue any effort to examine the evidence available to him in an effort to ensure probable cause existed for the warrants. If there's a failure to investigate, there's no investigation, how can we use investigation as a basis for prosecutorial immunity, as an exception to prosecutorial immunity? So is the word properly inserted there get us past the hurdle? Doing an investigation that shows. Or pursue any effort to examine the evidence. That's a failure to do anything. Well, the problem, Your Honor, is you can't just do half an investigation, take out a warrant, and put three people in jail, and then turn around and say, oh, no, we didn't do any investigation. Let me be clear. I agree with you. That's completely wrong. That's not what we're talking about here, though, and you know that. We're talking about immunity here as laid out by the Supreme Court. And so my question is if the complaint says there was no investigation here, that's the fair inference from your own allegations, then how can we say, and there's all there is is a conclusory allegation that there was an investigation, how can we say that there was an investigation that would carve out the exception created by the Supreme Court for investigatory as opposed to prosecutorial work? Respectfully, Your Honor, first of all, it's not a conclusory statement. It's the facts. And then second, when we go back to how prosecutors operate, we need their disconnect. We need them looking at that probable cause, and this is what Justice Scalia was talking about, about the historical foundations of prosecutors. We need them to be able to look at that probable cause determination by that agency or by a grand jury and make an independent determination. I'm going forward. I'm not going forward. Evidence is not going to be admissible. You made a mistake here. Redo your investigation. I agree with you completely. That's how it's supposed to work. There was a complete failure here on every level. We agree on that. We do. But that's not the legal question that you and I are talking about right now. And so I'm just trying to make sense of what I have before me, which is a complaint with allegations that doesn't really tell me what investigatory work was done and that specifically says that no actual investigation was done. But you have an independent finding, Your Honor, that whatever was done was insufficient to issue a warrant, yet Mr. Howard and his investigator sought the warrant. If I can give you this analogy, if three Atlanta police officers— I know, but that's true of a prosecutor. If a prosecutor presents a complaint to a judge and says, Judge, I think this is enough, and the judge signs off on it, and it's later determined, and this happens, there's a suppression hearing, and the judge determines there is a complete deficiency of probable cause in the warrant, the prosecutor doesn't lose their immunity in that situation, do they? No, because they're acting as a prosecutor. Here, Mr. Howard and Mr. Thomas were acting as investigators. And if you look at the analogy that I wanted to give the court, if three Atlanta police officers arrested Paul Howard and Keisha Lance Bottoms and then held press conferences and then it was turned out later by a special prosecutor there was no probable cause, they did absolutely nothing wrong, we wouldn't be here on a motion to dismiss. We'd be here on a settlement conference. This is absolutely absurd, and you can't look at it in a vacuum. The motivation for doing this, and this gets back to the malice that we pled, this was on the eve of a miserably failed re-election campaign. Can I ask you about that? So the malice standard, we're talking about Georgia's malice standard, right? Okay, so under Georgia's malice standard, as I understand it, and I'm no expert on Georgia law here, but as best as I understand it, it requires an actual intent to harm the defendants, correct? Yes. Is that a fair statement of law? I think it is. Again, I've pored over the complaint here. And the allegations to me seem to be that they did this to benefit themselves. I don't see any allegation other than Conclusory 1 that they did it to harm the defendants here. In other words, they did it for their political advantage. You've just said it. That's what the allegations are. That's different than I did it because I wanted to hurt these particular people. Is it not?  Why not? There is no other possible advantage that they hung these three men out as scapegoats and destroyed their careers. They sent them to Rice Street and put them in prison to benefit themselves. What more malice can you need in search of political power than what they did to these three decorated officers? But don't you need to plead that? We did, Your Honor. I have looked at this complaint, and I understand you're struggling with it. Counsel, what you pleaded, what you pleaded was that they did it for their political advantage. I agree with everything you've just said in terms of right and wrong, morally right and morally wrong. That's not what we're talking about. But we plead that they did it with actual malice. You used the words actual – you used the term actual malice. That's true. But you can't just incant legal statements. You have to have plausible facts. And the plausible fact that you've alleged is that they did it for their political advantage. That is to help them. That isn't necessarily by definition to harm any particular person as a result. What other possible result could they expect to come from their actions? It certainly is the consequence of what they did. There's no doubt about it. No, but actual malice, Your Honor, gets to a mental state in a mental – Right. It's that at the time I was acting, I was acting for the purpose of hurting you. Exactly. So if you sued me and the question was whether I acted in actual malice, the question would be did I intend to hurt you? Not did I intend to help myself, help my career, get elected to public office, but it's did I intend to hurt you? And under 12B Statute 6 standard, that's exactly an inference that should have been raised from the complaint and from the allegations we raised. There is no other inference. When I just asked you the question, you said, yes, that's a reasonable inference. No, no, that's not what I said. I said that, of course, that's a direct consequence. But that's – the inference from the consequence isn't that I did it with the intent to hurt you. The inference is exactly what you wrote. It's that there's not an inference. It's what – the words in the complaint, which is this was done to benefit their political careers, to help them. It's a plausible claim that they acted with actual malice. That's what we stated. But how are you getting from – the disconnect that I'm hearing as we're going back and forth here is that you're saying it's a consequence of their intention to help themselves, that your clients were harmed. It's a result of their intention to benefit their political careers that your clients were harmed. But results and consequences are not the same thing as intent. You have to have pleaded that there was an actual intent to harm the defendants, and that's missing from the complaint. Respectfully, Your Honor, I think we did plead it. But let me ask you this. If the statements had been directed at the Atlanta Police Department writ large, then I believe that you could probably take an inference that maybe it was just for their own political advantage. It was directed at these three individuals and resulted not only in destroying internationally their reputations but resulting in their incarceration. I think that we have pled a reasonable inference from the facts and from our pleadings that the intent was to harm. There can be no other intent. You can't say in a vacuum, okay, well, yeah, my political aspirations were X, and I knew it was going to cause damage to these three people. When Paul Howard had a press conference, when Keith Lynch Bottoms sought out media efforts, they focused on these individuals. That's an intent to harm that's elucidated from the facts. All right. Thank you, Mr. LaRusso. You have five minutes left for rebuttal. Thank you. And I know we have four lawyers who are about to speak. You're each going to get five minutes. I'm just fair warning, five minutes is going to go far more quickly than you think. I understand. Thank you, Your Honor. Anna Rita McGovern on behalf of Appellee Greg Thomas. Thomas is entitled to absolute immunity under the functional test of Buckley because in this case, obtaining the warrants was inextricably intertwined with the initiation of the prosecution. But if he's the swearer, what your opposing counsel is saying is the swearer doesn't get to go and lie. The prosecutor who presents the sworn testimony that is potentially false or erroneous gets the immunity. That seems to be the distinction your opposing counsel is drawing. I understand, and that's getting into Kalina, and Kalina said that every single act in Kalina where the DA presented that information was subject to immunity. Doesn't what really matter, though, is that whether Mr. Thomas was acting as an agent of the DA at the time. I mean, that's really what this comes down to. It's extremely important because under the case law, that's distinct from being a police officer. He's not free to arrest people on the street. He only acts in initiation and in working with the judiciary. I will say, though, your opposing counsel raises some really, I think, strong points about why this arrangement really is a subversion of what prosecution should be. Well, Your Honor, my client had no control over that. He was employed as an investigator. What's more important in this case is that he was, in fact, operating at the moment. Counsel, please don't tell me your client didn't have control. This isn't a, we're not here of, I was just following orders. That is not going to fly here. Well, Your Honor, if they had actually pled anything about what my client did in being a complainant, any words at all, there's not a single word from the complaint. And this is a second amended complaint. They have multiple opportunities to add it. There are simply conclusory allegations, which are barred by Iqbal and Twombly, as well as Jax-Krabschack. And the courts have made it clear that you can't. Is it enough? So Judge Branch asked, I think the first question she asked your opposing counsel was, there does seem to be some plausible allegation that they reviewed the footage here, at least that's a fair inference. That's some investigative work, is it not? Reviewing it, and there's questions whether or not my client reviewed it. They make the allegation Paul Howard reviewed it. Either your client is an independent actor or he's not, but the office reviewed the tape or not. As you stated previously, under the law, a failure to investigate is protected by absolute prosecutorial immunity. But the complaint says, the complaint doesn't say failure to investigate. It says failure to properly investigate. Certainly, Your Honor. They've mentioned the video and that failure to further investigate. However, they've also referred to this pre-indictment standard, and it ignores cases just like this, where there are search warrants, bench warrants, Burns v. Reed, Kalina v. Fletcher, Rojas v. Dunn, all these other cases where it has been earlier on. And the question is, is it inextricably intertwined with the initiation of prosecution? Buckley was problematic because it was asking for a paneling of a special grand jury for more investigation, and then it took 10 months to proceed. We have a DA making a press conference at 11 o'clock, and at 10.30, my client is getting these arrest warrants. That is intertwined with the initiation of the judicial process. I know. I know. But, counsel, where the DA takes the — and this question will have asked your counsel at the table there. But where the DA undertakes the investigation himself and the prosecution and all elements of this, in other words, he is police and prosecutor together, which seems to be what happened here, then doesn't he get the result of the police stuff is not immune, but the prosecutorial stuff is? In other words, there has to be a line somewhere. Your Honor, it's no different, according to the Supreme Court, in Burns v. Reed. It's no different than in Kalina v. Hodges. The Supreme Court of the United States has said that this is acceptable to do, but the question is, is it starting a prosecution or is it going to dig up an investigation? What they said there is once you have the case in a box, the prosecutor is allowed to take the box to the judge and get a warrant, and that act of getting the warrant and going forward is entitled to immunity. But the investigative stuff that precedes the official prosecution, the beginning of the case, whether a search warrant, an arrest warrant, an indictment, an information, anything, anything before that is outside of the immunity. Am I right? You're right. If they had pled any acts that they had done in terms of investigation in the Second Amendment complaint— So if they did plead, if it is a reasonable inference that they pled, that there was a review of the footage and on that basis they sought the warrant, isn't at least that act investigatory? That's not necessarily investigation in and of itself. That goes to, really, we would still win on qualified immunity because— Well, maybe, but that's not what we're talking about right now. Okay. On prosecutorial— That in and of itself isn't necessarily investigation. That, as was discussed in the last argument, would be a customary thing that would be done by DA's office. That's not investigation. And my client did not go seeking an arrest warrant to investigate and get more facts. He was getting the arrest warrant for the purpose of having the whole public know this prosecution was going forward. And that's initiation of prosecution. That's why it's in line with Burns v. Reed and all of these other cases. It's the timing of it. And that inextricably intertwined, that is the standard in Imbler and in Kalina and in Buckley and all of these cases. Thank you, Ms. Govern. Thank you very much. I appreciate it. Absolutely. Mr. Green. You have five minutes. May it please the court. The investigation that was pled was only reviewing body cam video. Isn't that investigation? I don't see how. It's simply reviewing body cam video. But doesn't that go to the fact that the problem here is that you have the DA who decided to become the police as well as the prosecution? Because normally you have the police who review the body cam and then they bring it to the DA and say, you know, we've reviewed it and we believe that there's probable cause here. I think a prosecutor is always going to be entitled to look at the evidence. But there's a big difference where you are conducting the investigation from the beginning. In other words, there's a difference between the review of evidence that has been collected and that has been submitted versus the collection of evidence itself for the purpose of initiating the prosecution. Those are different things, aren't they? They are. But in this case. That's really the crux of what your opposing counsel is talking about. Well, looking at cases like Buckley, right, I mean, the investigation was going to the crime scene. I mean, it was acting like a detective. I mean, it was really acting like a police officer. Reviewing the evidence and deciding whether to initiate a prosecution is much different. Every prosecutor does that. It's intertwined with the judicial, I mean, the prosecutorial function. So are you suggesting in a case where the body cam footage becomes sort of the be-all, end-all of determining probable cause, in that circumstance the prosecutor can always collapse the prosecutorial and the investigative duties into one, look at the body cam footage, move forward, and prosecutorial immunity applies? I think the prosecutor can look at the body of evidence and decide whether to initiate the prosecution. And that is a prosecutorial function, and it's something that every prosecutor does. But the body of evidence here has not been gathered through an investigation. Here, the prosecutor is looking at body cam footage, and based on that, has decided to move forward with the prosecution per your argument. So is it something unique about when you have body cam footage, if it's determinative, that the prosecutor can collapse those two roles and still enjoy absolute immunity? Is that what you're arguing? Well, I mean, body cam function, look, it is open to the public. It's available under the Freedom of Information Act. Any citizen can get the body cam footage. It was available online almost immediately. I know, but they've alleged, they say they have plausibly alleged that that was the investigation that was done here in seeking and in obtaining the arrest warrant. I mean, I understand that this all could happen, but we have a complaint that we have to look at to see whether something was plausibly alleged and whether that falls within the scope of prosecutorial immunity. So given that allegation, is that not on the investigative side of things as opposed to the prosecutorial side of things? I think that's a stretch, and I mean, looking at the Mullinax case, that case was largely about the prosecutor having immunity for the factual investigation needed to determine whether or not to initiate a prosecution. And I think that's analogous to this case where you have a prosecutor simply looking at the evidence, making a decision to initiate a prosecution, something that every prosecutor does. Should we read this complaint as a failure to investigate at all? Maybe. Well, I'm asking you as the lawyer representing the prosecutor here, so the one that this matters to, how is this plausibly alleged? Is it alleged as a complete failure to investigate at all and just sort of just charge, go, and followed by press conference? Or is this, we did, there was some investigation, and based on that investigation, they saw it process? The way I read the complaint is that they are alleging there was no investigation, that this was Howard trying to have a political game for himself and didn't conduct any investigation whatsoever. And, in fact, looking at the body cam footage, the district court, I think, cited Mullinax for the fact that having the factual investigation to determine whether or not to initiate a prosecution is tied in with the prosecutorial function. Does the panel have any additional questions? Thank you, Mr. Green. Thank you. Mr. Plott, five minutes. Good morning. May it please the court. My name is Matthew Plott, and it's my honor to represent Fulton County Government in the present appeal. The present appeal was brought by the appellants after all of the appellees' motions to dismiss were granted as to the second amended complaint. In that second amended complaint, there were only two counts brought against Fulton County. That was a training claim under 42 U.S.C. 1983 as well as an unlawful seizure claim. The district court granted the motion to dismiss on two bases. First, there was a finding that Paul Howard was acting on behalf of the state, performing a state function at the time the acts were committed, not on behalf of Fulton County, as well as the fact that looking at the merits of the claim, the district court found that the appellants The first part, do you think that rises and falls on whether we find that there was, in fact, a sort of a pre-prosecution investigation or what I think is termed by your opposing counsel as a probable cause investigation? No, Your Honor. Fulton County would submit that that is not determinative. What's determinative here is the control that Fulton County had over Paul Howard and the investigators that he employed in his office. Why is that true for whether he's acting as a county or state official? In other words, as I understand it, the DA, the Georgia statute defines the duties of a DA. And those things, investigating is not in there. Now, things that are attached and attended to prosecution are in there. And I think there is this concept of reviewing evidence that's been submitted that has to be part of that function. But investigating a crime is not a prosecutorial function as defined in the Georgia statutes. Do you agree or disagree? I would disagree with that, Your Honor, based on 1518.6, which was previously paragraph 7. Now, I believe it's paragraph 8 after a change in 2023, which requires a district attorney to, quote, Right. In other words, if they come to you and say, hey, you know, is this legal, what I'm about to do here, they have to give that advice or they're authorized to give that advice. But they don't – that doesn't tell them they can – subsection 8 doesn't tell them they can investigate themselves. The prosecutor himself can't investigate. Well, Your Honor, I think it gives the district attorney the authority to provide guidance on that. Oh, there's no doubt about that. But that's not what's alleged here, is it? I mean, what's alleged here is not that the police called them up and said, hey, we're thinking about doing this. What do you think? What they – what is alleged here is Howard took it upon himself to launch an investigation, immediately prosecute, and then immediately after that hold a press conference to destroy the lives of these three people. But, again, I think we go back to the bigger picture. Did anything I just say, is that incorrect? Your Honor, I would submit that, again, as part of the advising on the investigation stage, because he is investigating, whether it's a determination this is a pretrial investigation or not. Right, but under what theory do you have, under the Georgia statute, to become an investigator and become Matlock or Sherlock Holmes? I mean, like, that's not necessarily the role of a prosecutor. Well, Your Honor, I – I understand that a prosecutor can work in tandem with an investigator and say, you know, I need more evidence. You need to go gather more evidence. I understand that, but there's a big difference between a DA who decides to become the investigator. But, again, I think stepping back into the role of Fulton County here, I think regardless there's no allegation that this was a county function that was being performed. And that's what's at issue in this case as to whether Fulton County can be held liable for either of these actions, is there's no Fulton County action that's alleged, and there's no action that Paul Howard – Isn't it a theory, though, that it falls, unlike the prosecutor, it falls to the county to investigate crimes, that that is a role for the county and specifically the county sheriff or the county police department, and that's the function that he ended up taking, so he was acting like a county official? That's the theory, isn't it? I would say it's probably the theory articulated by the appellants in this case. However, again, that does not mean that the county can be held liable under Monell because the issue is whether there's control over the function. Not if he's a policymaker. I mean, not if he is sort of the apex person. Then his decisions become the policy of the county, right? But there's no evidence under Georgia law that he is a policymaker for Fulton County, and the county wouldn't be authorized to do that because they wouldn't ultimately have any control over him if he stepped outside of that role. And there's no allegation here that that specific policymaking authority was delegated by the county to Paul Howard. There's no allegation in the complaint as to that, and there's nothing under Georgia law that would suggest that that's his role. If we were to find that there is either no plausible allegations under Iqbal and Tuamli of investigation or find that the allegations actually are that there was zero investigation, that nothing was done, that's the harm here. In other words, he just prosecuted without actually doing anything. Would either of those things sort of defeat his part on that first part that the district court ruled on to hold the county liable? In other words, if there was no investigation, then he can't be a county official and he's a prosecutor official, and then that's it, right? Correct, Your Honor. Thank you. Thank you. Mr., if I mispronounce this, please correct me, Freitas?   Thank you. Good morning. May it please the Court? Phil Freitas. My honor to be here in front of this Court representing Felicia Lance Bottoms and Eric Shields. Many potentially juicy issues here in the case against them, but I think that we don't get to a lot of them based on the way the case was played and the allegations in the complaint and the way that it has been argued. I can go to equal protection or I can go to reputational liberty due process, depending on if you have a choice. Why don't you address each of them and we'll jump in. Sure. So for the equal protection case, question one is what is the group or class being identified? The group being identified being these officers, and I'll take that a little bit further in a moment. They are not a suspect class. They are not a class in which the Court has traditionally given— But even if they're a class of one, even if each one is a class of one. Right. So with class of one, we don't get home at all because ANQUIST absolutely prohibits a class of one claim in public sector employment. What if the class is those who have been vilified by your clients? Those who have been vilified by my clients? Yeah. Those who have been defamed? Sure. Okay. So then we'll take it to the next step and define the group again. The similarly situated group has to also be a group that was defamed, and they don't identify that at all. In fact, they attempt to differentiate themselves from those who are defamed, saying, hey, we committed an excess of force here in this time of turmoil, and we got defamed. This group over here— No, I don't know if I see it that way. In other words, the defamation is just the definition of the group, and the question is whether because they have been vilified, they were treated differently from those who were in all other material respects the same. So in other words, it isn't the defamation that is in all material respects. That's the definition of the class. It's that in every other aspect they were treated the same. So what they say is, you know, there were lots of other people who had excessive force allegations against them, but we were fired and jailed, whereas others were just given some sort of reprimand or investigated. And that's because we were vilified and singled out by your clients. I thought it had to do—the way that it—it's difficult to read the complaint. I thought that it said—it implicates that they were on national television because of their actions before the defamation. And so I think the comparative class would be those— if anybody was also on national television and got differentiated, but there wasn't. Yeah, but we don't do comparisons based on the category. In other words, let's say this was a sex discrimination, an equal protection case. We don't look at women and people who are not women. I mean, we don't say, you lose because you're not a woman and they're the woman. You say, you're women, you're men, and everything else we look at whether they were equally treated or not. And I think that I'm agreeing with you. Okay. And I'm saying it in a way you might—they may not be getting home. Okay. So let's take that agreement and go forward. So if the agreement is those that have been nationally publicized as have done something and those that were not nationally publicized to do something, that's the categories. Everything else is the same, which is we're police officers for the Atlanta Police Department. We've committed excessive force or are alleged to have committed excessive force. This group was fired and jailed and destroyed reputationally. This group is not. Okay. Assuming that characterization is the way we should go, then I believe we're on the rational basis. Tell me why there's a rational basis for these actions. Okay. There's a rational basis for these actions because we were in a state of an emergency, an unprecedented state of emergency, a generational state of emergency. The officers themselves, all officers themselves, number one, were the whole purpose for the protests. Excessive force of officers were the whole purpose of the protests. These very officers now—oh, and also while the protests, our officers were in danger. The city police, they were firing things at them, throwing things at them, running them over with vehicles. So we had a police force that was under attack in the middle of a protest because police officers supposedly used excessive force too much. Was that what your client was thinking when she went on radio and said that she wanted to send a message to the officers? I don't know. I think so. I don't think there's anything wrong with it. They had—she had a rational basis for attempting to quell this. If she took no action against these officers, oh my goodness, it would have gotten far worse. If she put them on leave without pay, it wasn't enough to her. That doesn't make her decision to fire them irrational. She just wanted to quell, and I think that that is enough on the rational basis side. As far as the due process reputational liberty claim, assuming there was defamation and assuming it came with a termination, then we have the right in our circuit to a name-clearing hearing. The plaintiff argues lack of notice and the whatnot. I don't think that we could possibly have a lack of a notice when we actually had the name-clearing hearing. We had potentially— Wrap up this sentence because you have exceeded your time. Oh, I have. I'm so sorry. Okay. I wasn't paying attention. As far as the name-clearing hearing goes, plaintiff fails to state a claim under Iqbal and Twombly as to why what was held was not good enough. Thank you very much. Thank you. Mr. LaRusso, you have five minutes for rebuttal. If I can go briefly in reverse order. If the mayor is stating that if she followed the law, it would have been irrational, there is absolutely no rational basis for acting the way she did, especially in an emergency that she declared. You can't declare an emergency and say, because I declared an emergency, I'm going to suspend the rule of law. What about in the complaint, it references a radio interview that she did. I think it's either a radio interview.  A podcast. So it's a podcast interview in which she says, I've watched the videos, and we need to send a message to the officers of the Atlanta Police Department that excessive force is not going to be tolerated in the department. I'm paraphrasing. I can give you the exact quote, but I'm paraphrasing. Is that not a rational reason to act the way that she did?  Why not? Especially when, prior to that, she says, in any other time other than this emergency that I declared, we would take our time and do an investigation. But in the time we are in America, I don't have time for that. Doesn't that feed into exactly the argument your opposing counsel just made, that this was a special and unique time in the history of the city of Atlanta and certainly in the United States of America, such that different measures would need to be taken? Again, that doesn't justify the measures. We're only talking about whether there was a rational reason for doing what was done. No, it is not rational to disregard duly passed ordinances and terminating them. And in addition, my clients were— Yeah, but that would be true. That would be true of any illegal act. In other words, what you're saying is because it's illegal, it can never be rational. And I don't believe that to be true because it would just be circular. We ask the irrational basis because it is a very light touch, and you get a claim because there is some illegal act or some discrimination here. And so my question is, is it not rational to act in this way because of the extraordinary nature that's alleged in the complaint? Even pretermitting that I agree with you, which I do not, the first interview, the second interview, the fourth interview, at what point is it no longer rational to keep defaming the police officers that are at issue in this case? And in addition, I would point the court to the issue that was brought up with so far as the connection between Investigator Thomas. First of all, the state law is very clear. Officer Thomas can't arrest people on the street. He's a law enforcement officer. That's why his training is so important. Owens is very clear that training, administrative functions are county functions. They are not state functions. So this notion that Owens carries the day, it does not. The training issue that we alleged is a county administrative function, and Paul Howard was charged with doing that, that failure to train. So training, if the DA of any prosecutorial agency in the state of Georgia trains its prosecutors, that is a county, not a prosecutorial function? No, because the prosecutors are generally, there's two classes. So it comes down to whether he was a probable cause investigation or not? Partly, but it also comes down to the fact that these county investigators are paid by the county, the same analysis that the court went through. Yeah, but as we just learned from the last oral argument, there are a lot of employees that are paid by the county. What both we and Georgia have said is that's not a loan sufficient to make them county. They're still state officials. It's not a loan sufficient, and respectfully, Your Honor, this is tied to Owens and it's tied to prosecutorial immunity. Thomas alleges that his actions were inextricably intertwined with prosecutorial actions and cites the press conference, which by definition from Buckley is not a prosecutorial action. I agree with that. But in addition, the act of seeking the warrant does seem to be pretty closely intertwined. The act of what he did before that and then going down to the courthouse to get the signature on the warrants, which were then brought to the press conference, does seem to be pretty close in time together. Well, the problem that you have is, as courts have said, you can't cover your act that you were not supposed to do in the aegis of, oh, down the road we were okay. If you look at what prosecutors do normally when they look at cases, and this is why Justice Scalia was so spot on when he talked about the historical role of prosecutors, they get a grand jury indictment. In the federal system, an AUSA, which I submit this would never happen with the press conference that took place, but with an AUSA they go to the FBI. What do you have? Oh, you need some advice? I'll give you some advice. You took a warrant. We'll go to a grand jury. Now it's mine. You gave a great analogy. Once that box comes to the prosecutor's office with a pre-probable cause package, now everything they do is prosecutorial. We want prosecutors looking from a 10,000-foot view, saying good evidence, bad evidence. We're going forward. We're not. And Judge Branch said this exactly right. What happened here was Paul Howard tried to do both roles, and when you talk about malice, the only reason he did it, and we allege this, was to gain an advantage in a political event and use these officers as scapegoats. Is it a different situation when we have fairly complete body cam footage? Is all of that in a box now so that the prosecutor can just take the body cam footage and go, I don't need an investigation. I'm just proceeding with the prosecution because I've seen the body cam footage. No, and respectfully, Your Honor, first of all, and I'm going to be adamant about this, there was no excessive force that has been found by an independent prosecutor. There was no excessive force used whatsoever. The mayor is a member of the bar. The police chief, 30 years of experience. Paul Howard is a prosecutor, and Thomas is a trained investigator. Aside from that, they are supposed to take into account legal justifications. All right, you've exceeded your time. So if you want to just wrap that up, that thought. You can't say, okay, well, we're going to disregard all the legal justifications for the actions that you took and arrest you anyway and then screen prosecutorial immunity. They should have known better, and these charges never should have been brought. Thank you. Thank you all. We have your case under advisement, and court is in recess until tomorrow morning.